BARISH-SANDERS MOTOR COMPANY, APPELLANT, V. FIRE-
MAN'S FUND INSURANCE COMPANY, APPELLEE.
278 N. W. 374

FILED MARCH 4, 1938. No. 30118.

*Johnsen, Gross & Crawford,* for appellant.

*Swarr, May & Royce, contra.*

Heard before GOSS, C. J., EBERLY, DAY, PAINE, CARTER
and MESSMORE, JJ., and TEWELL, District Judge.

EBERLY, J.

This is an appeal from the judgment of the district
court for Douglas county sustaining a demurrer to plain-
tiff's amended petition, on the ground that the same did
not state facts sufficient to constitute a cause of action.
The action is one at law upon a "Transportation Floater"
policy. It is not a suit in equity to reform the policy, and
to recover upon the instrument so reformed. Plaintiff's
petition properly pleads the terms of the policy in suit,
and attached to its pleading, with due reference, is a
photographic copy of the policy. As the basis for its claim

for indemnity, plaintiff alleges that four automobiles, constituting a cargo covered by the terms of the insurance policy, while en route and in transit, while "passing beneath an overpass near Iowa City, Iowa," collided with and struck said overpass, and three of said automobiles were damaged in the sum of $1,056.10. The items of damage suffered are itemized, but there is no allegation that the vehicle on which the automobiles damaged were being carried collided with the overpass and the right to damages is predicated solely on the collision of the cargo or load.

The policy in suit is known as a "Transportation Floater" policy. By its terms, it insures certain goods and merchandise, including automobiles, trucks, and farm machinery in transit, against certain specified perils. The terms of the policy appear in part in the printed provisions of the form employed, and in part in typewritten additions thereto. "Transportation Endorsement C," attached to and constituting a part of the policy in suit, so far as material to this controversy, as part of the printed provisions embraces the following:

"This policy insures (except as hereinafter provided) only against direct loss or damage by:

"(a) Fire and Lightning;

"(b) Explosion;

"(c) Tornado and Cyclone; Windstorm & Hail;

"(d) Accidental collision of the vehicle with any other vehicle or object, excluding, however, contact with any portion of the roadbed, curbing, rails or ties of street, steam or other railroad, any stationary object while backing for loading or unloading,"

The photographic copy attached to the petition discloses that in addition to item "(d)" quoted above, which terminates with a comma, the original blank policy as part of item "(d)" contains the words "and collision of the load with any object." It also appears that the last-quoted words were stricken at the time the policy was written, with the use, as plaintiff's brief informs us, of red ink.

Plaintiff's contention may be summarized in the following words, quoted from its brief, viz.:

"Beginning with the word *'excluding'* is a series of phrases separated by commas, until the end of the paragraph. The last phrase 'and collision of the load with any object' is stricken out. If a plain reading and understanding of the English language means anything, the phrase 'and collision of the load with any object' is an exclusion in the original printed form. When it was deleted by the agent, the 'exclusion' no longer being a part of the policy contract, that hazard so excluded became 'covered.' A simple statement of the situation is to the effect that the striking of an 'exclusion' has the effect of making 'coverage.' "

But the meaning of item "(d)," after the clause quoted was stricken out, still remains clear and definite. The language is not ambiguous. It plainly does not include damages occasioned by load or cargo collision as part of the coverage of the policy.

"The rule to construe ambiguous or inconsistent terms of a life insurance contract in favor of insured, because insurer selected the language used, does not justify the imposing of insurance risks not assumed." *Himelbloom. v. Metropolitan Life Ins. Co.,* 128 Neb. 52, 257 N. W. 525. See, also, *Stone v. Physicians Casualty Ass'n,* 130 Neb. 769, 266 N. W. 605.

A similar situation involving the construction of similar language was presented in the case of *Mendelsohn v. Automobile Ins. Co.,* 290 Mass. 228, 195 N. E. 104, wherein the supreme judicial court of Massachusetts announced the rule, viz.:

"Under policy insuring against loss or damage to goods while loaded for shipment, or in transit on described truck, by 'collision' of truck with any other automobile, vehicle, or object, insurer *held* not liable for damage to goods on top of load which came in contact with overhead bridge, where no part of truck itself came in contact with bridge."

But, it would seem that item "(k)" which follows item

"(d)" in the same division of the policy in suit; and which is a typewritten addition of coverage to the printed form, also supplies a negative answer to plaintiff's contention. It reads as follows:

"Loading and unloading hazards due to perils specified above, and in addition, *damage by collision* or overturning of cargo *while being loaded or unloaded.*"

The effect of item "(k)" was to increase the insurance coverage by adding thereto damages for collision of cargo while being loaded or unloaded. It is a very limited collision liability, but nevertheless it is, to the extent of its terms, strictly and wholly repugnant to the printed provision, viz., "excluding * * * collision of the load with any object." The Century Dictionary and Cyclopedia definition for "collision" includes "the meeting and mutual striking or clashing of two or more moving bodies, or of a moving body with a stationary one." Therefore, when the latter provision of limited liability for collision damages was added by item "(k)," reasonable care on the part of the draftsman would dictate the striking of the provision of the printed form repugnant thereto. This was necessary to harmonize the terms of the instrument after this typewritten addition thereto was made. Under these circumstances the "striking out" of the last clause of item "(d)" is not the creation of an extended coverage.

When by express terms a limited collision coverage of cargo was specifically added to the policy, it cannot be extended by construction beyond the limitations contained in the language thus employed. The controlling maxim is: *"Expressum facit cessare tacitum."* Broom's Legal Maxims (9th ed.) p. 420.

It follows, therefore, that the judgment of the district court is in all respects correct, and it is

AFFIRMED.