### MERCURY INS. CO. v. VARNER.
#### No. 2801.

Court of Civil Appeals of Texas. Eastland.
June 9, 1950.

Rehearing Denied June 30, 1950.

Carrington, Gowan, Johnson & Walker, Dallas, for appellant.

Scarborough, Yates, Scarborough & Black, Abilene, for appellee.

COLLINGS, Justice.

This suit was brought by W. H. Varner, appellee, against Mercury Insurance Company, appellant, upon a policy of insurance covering certain oil field equipment including a steel drilling mast. Appellee alleged that while the insurance policy was in effect he was moving the drilling mast on a truck and trailer from one location to another and, in doing so, necessarily passed over a rough pasture road; that while traveling upon said road, the fifth wheel device holding the king pin broke or came loose, whereupon the trailer became detached and the load fell to the ground breaking and damaging the drilling mast. The case was tried before the court without a jury and judgment rendered for appellee for $1,000 the agreed amount of his damage. From such judgment the insurance company brings this appeal.

The policy of insurance provided that the Mercury Insurance Company "does insure W. H. Varner * * * to an amount not exceeding $7,000.00" on the property described. The specific provisions of the policy concerning the perils insured against are as follows:

"4. It is understood and agreed that this policy shall include property as above described (except as hereinafter excluded), subject to direct loss or damage by perils named herein, being either their own, or property sold but not removed; also, on their interest in or on their legal liability for similar property rented or leased or held on joint account with others, or being repaired, all while located as described above.

"5. This Policy Insures Against Direct Loss or Damage By:

(a) Fire and Lightning;

(b) Tornado, Cyclone, Windstorm and Hail;

(c) Explosion above the surface of the ground (except as hereinafter excluded);

(d) Collision, derailment or overturn of the tranporting land conveyance while in transit by railroad, railway express and/or motor truck; marine perils while being transported on a regular ferry line;

(e) Collapse of Bridge or Culvert;"

There were numerous exceptions to liability set forth in the policy but there is no claim that any of them are applicable to the facts of this case.

The court filed findings of fact and conclusions of law, among which were the following:

"Findings of Fact

"2. I find that the hazards insured against under said policy included under sub-paragraph D, Paragraph 5, injury or damage resulting from 'Collision, derailment or overturn of the transporting land conveyance while in transit by railroad, railway express, and/or motor truck; * * *.

"4. I find that it was the purpose and intent of said policy as reflected by the entire instrument to insure said equipment in the stated amount while in transit from perils arising from transit not especially excepted against.

"6. I find that on or about June 2, 1949, while said mast was being transported in a motor truck over a rough ranch road on an old-type semi-trailer attached to a truck tractor, that the pole became detached from the fifth wheel arrangement which held it to the tractor, and that the pole dropped down and the mast struck the road and was thereby damaged in the agreed amount of One Thousand and no/100 ($1,000.00) Dollars, and that said amount, as agreed by the parties, is the amount of the loss.

"7. I find that the loss occurred as a result of the hazards of transportation over a rough road."

"Conclusions of Law

"1. I find that the policy, as a matter of law, included the type and kind of accident which occurred in this case.

"2. I find, as a matter of law, that the phrase 'Collision, derailment and overturn of the transporting land conveyance while in transit by railroad, railway express and/ or motor truck; * * *' when used in connection with the balance of the policy was meant and intended to cover hazards of land transportation (not otherwise excepted in the policy) and including such hazards as the detachment of the trailer from the tractor in this case with the resulting throwing of the load to the ground.

"3. I find that 'overturn' as used in said policy, had reference to and included any means by which the load or cargo could be thrown to the ground by physical force of an accidental nature, other than those causes especially excepted against, and I find that the injury and loss in this case resulted from an 'overturn' within the meaning and intent of said policy.

"4. I find that the defendant is liable for the amount of the loss in the sum of One Thousand and No/100 ($1,000.00) Dollars."

Appellant contends in its first point that the court erred in holding that the policy insured against loss to the equipment arising from perils of transit not especially excepted against. The point is well taken. It is true as urged by appellee, that the intention of the parties to a contract is to be gathered from a consideration of the entire instrument taken from its four corners. The fact, however, that the policy specified certain risks against which it did not insure cannot, within itself, be given the effect of enlarging or adding to the risks intended to be covered. When the policy is considered as a whole, it is, in our opinion, evident that the only perils insured against are those enumerated under Section 5 of the endorsement.

Appellant further contends, in effect, that the court erred in holding and in basing its judgment thereon "that the injury and loss in this case resulted from an 'overturn' within the meaning and intent of said policy." The particular portion of the policy referred to is Section 5(d) which provides: "This policy insures against direct loss or damage by * * * collision, derailment or overturn of the transport land conveyance * * *"

The evidence showed that the drilling mast in question, at the time of its injury, was being transported over a rough ranch road on a Chevrolet truck and semi-trailer. The truck and trailer were held together by what was described as a fifth wheel device which also permitted the trailer to follow properly on turns. The total length of the truck and trailer was about 38 feet.

The drilling mast was made of steel and was about 30 inches wide and 48 feet long. One end of the mast was resting on the truck and the other on the trailer. While so driving along the ranch road at about five miles per hour, the fifth wheel device holding the king pin, in some unexplained manner, came apart, whereupon the trailer became detached and separated from the truck and the portion of the mast resting on the truck fell to the ground and in striking the ground was injured and damaged in the agreed sum of $1,000.

There was no evidence in the record of a complete overturning of either the truck, the trailer or the drilling mast and no such contention is here made. If it can be held that there was an "overturn" it must be based on the fact that the trailer and mast tipped forward causing the mast to strike the ground and become damaged when the connection between the truck and trailer was severed. In determining liability under an insurance policy, if any of the provisions or terms thereof are uncertain, it has been held that the courts will "adopt that construction * * * most favorable to the assured and most consistent with the purpose for which the policy was issued." C. & J. Commercial Driveway, Inc., v. Fidelity & Guaranty Fire Corporation, 258 Mich. 624, 242 N.W. 789, 790; Meyerstein v. Great American Ins. Co., 82 Cal.App. 131, 255 P. 220. In accordance with this policy, it has been held by this court that the purpose of the insurance policy was to cover the cargo and it, therefore, covered damage to the cargo from contact or collision with a bridge even though the vehicle itself never collided with the bridge. Continental Ins. Co. v. Griffin, Tex.Civ.App., 218 S.W.2d 350. It has also been held by the courts that where a truck partially tips over, thereby spilling and damaging the contents, there is an "overturning" of the truck within the terms of the insurance policy. Since the tipping of a truck in such manner as to cause the load or a portion thereof to spill or fall and be damaged is considered an overturn, it is difficult to see why there should be any difference whether the tipping was to one side or the other or to the front or back. The reasoning is that the truck is "overturned" as that term is used in the insurance policy when sufficiently tipped over to spill its contents. Carl Ingalls, Inc. v. Hartford Fire Ins. Co., 137 Cal.App. 741, 31 P.2d 414. See also Moore v. Western Assur. Company of Toronto, Canada, 186 S.C. 260, 195 S.E. 558. In this case, the mast which had been supported by both the truck and trailer was left unsupported on one end when the truck and trailer became disconnected. The mast still resting on the trailer tipped forward and fell to the ground with the resultant damage thereto. This tipping of the mast on the trailer and the resultant fall was a partial overturn and in our opinion comes within the meaning and intent of the term "overturn" as used in the policy. We are also of the opinion that there was a collision within the meaning of the policy. Continental Ins. Co. v. Griffin, supra. Since the policy included the type of injury which occurred, the insurance company is liable for the damage sustained.

The judgment of the trial court is affirmed.