## PROFFITT v. PROVIDENCE WASHINGTON INS. CO.

### No. 9902.

Court of Civil Appeals of Texas. Austin.
Oct. 25, 1950.

Rehearings Denied Nov. 22 and
Dec. 13, 1950.

Clyde Vinson, of San Angelo, for appellant.

Kerr, Gayer & Sutton, by Lloyd Kerr, of San Angelo, for appellee.

ARCHER, Chief Justice.

This case was instituted by O. C. Proffitt (the San Angelo National Bank intervened) against Providence Washington Insurance Company, on a policy of insurance upon his automobile, for damage to the automobile caused by collision and upset in the waters of North Concho River on a crossing along First Street in the City of San Angelo, under the section of the insurance policy concerning collision and upset.

The case was tried before the court without the aid of a jury, and recovery was denied.

This appeal is based on one assignment of error directed to the action of the court in denying recovery by the appellant, and in rendering judgment in favor of appellee.

The appellant alleged that the insured car, operated by his son, was driven onto the crossing, a causeway across the river, and hit the water and causeway and was upset by the floodwaters and washed off the causeway and rendered useless; that the automobile prior to the accident had a reasonable market value of $1,500 and immediately thereafter no value; and that defendant became liable under the policy for $1,450.

Appellee denied liability on the grounds that the loss was not covered by the insurance against collision or upset, and that the driving of the car was not the proximate cause of the loss.

The policy contains, among others, the following clauses:

"Item 3. In consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy, the company agrees to pay for direct and accidental loss of or damage to the automobile, hereinafter called loss, sustained during the policy period, with respect to such and so many of the following coverages as are indicated by specific premium charge or charges:

| "Coverages | Limits of Liability | Net Rate Premium |
|---|---|---|
| "B-1-Collision or Upset | Actual Cash Value Less $50.00, which deductible amount shall be applicable to each Collision or Upset | $42.00." |

"Insuring Agreements
"Coverage B-1— Collision or Upset
"Loss of or damage to the automobile caused by collision of the automobile with another object or by upset of the automobile."

It was agreed the policy was in effect at date of loss; that proof of loss was duly made; that the value of the automobile immediately before the accident was $1,350 and immediately after the accident $50; and the facts with reference to claim of in-

tervenor were agreed to. It was also agreed to that plaintiff owned the automobile at time of the accident and that such automobile was covered by policy of insurance.

In Coverage A the policy provides that "loss caused by * * * falling objects * * * water, flood * * * or civil commotion shall not be deemed loss caused by collision or upset." ·

The only witness to testify was Eugene Proffitt, son of appellant, who in the course of his testimony said:

"Q. All right, Now what happened when you came down there this particular afternoon driving that automobile? A. Well, a pretty good splash and then I slid over the causeway there or in the chughole.

"Q. What position was the automobile in? A. It was over on the side.

"Mr. Kerr: I didn't understand.

"The Court: He said there was a good splash and skidded over the causeway or in the chughole.

"Q. And what position was your automobile in after it settled down and splashed in the water? A. The right-hand wheels, the car slanted on the causeway there.

"Q. Then what happened to your automobile? A. I tried to get it out but the wheels just spinned, and the boy with me went to get a wrecker but by the time he got back it was already sliding down the river.

"Q. Well, what was happening; what was the water doing to the automobile? A. It was turning it over.

"Q. Well, how soon after you hit the water did the automobile — in other words, did the automobile come to a complete stop? A. Yes, sir.

"Q. Did the water move the automobile any immediately after it stopped? A. No, it never moved it immediately after it stopped.

"Q. What happened to it? A. Well, I was sitting there still working it back and forth about 6 inches.

"Q. All right. What happened to it while you were moving it back and forth? A. Started slipping down the river; I was trying to get it out after Danny went to get the wrecker.

"Q. And what happened to the automobile? A. It turned over from the force of the water.

"Q. That happened while you were pushing it back and forth? A. No, it slipped down the river there and then this wrecker got a hold of it and then it turned over in the hole — well, it was already turned over, half over, all the time there, and when the wrecker got a hold of it they pulled it back across the river, and then the wheels got in the hole or something where they couldn't get it out and they turned loose of it and then the water turned it over."

The facts are without dispute and are that when the car was driven down the hill and onto the causeway that there was a pretty good splash and it then slid over the causeway or into the chughole. It is, therefore, apparent that the automobile collided with the water and a portion of the causeway and this constituted a collision or upset.

▆ We believe that the loss sustained to appellant's car comes within the provisions of the policy of insurance and that there was a collision or upset of the automobile within the contemplation of the insuring clause in the policy, and that the subsequent resulting damages by the flood waters are within the coverage of the collision or upset section of the policy. Wood v. Southern Casualty Co., Tex.Civ.App., 270 S.W. 1055. Er.Dis.; 45 C.J.S., Insurance, § 797.

"In general, the question whether loss of or damage to, the insured automobile is within the coverage of a collision or upset policy depends on whether a collision or upset is the proximate cause of such loss or damage.

"* * * With respect to the coverage of a collision or upset policy the broad rule has been stated that, where the peril specifically insured against sets other causes in motion which, in an unbroken sequence and connection between the act and the final injury, produce the final result for which a recovery is sought under the policy, the

peril insured against will be regarded as the proximate cause of the entire loss so as to render insurer liable for such loss within the limits fixed by the policy, or even though loss of control of the insured vehicle was caused by a sudden outburst of flame in the vehicle." 45 C.J.S., Insurance, § 800.

See Camden Fire Ins. Ass'n v. Moore, Tex.Civ.App., 206 S.W.2d 104, W. Ref.; Federal Life Ins. Co. v. Raley, Tex.Com. App., 109 S.W.2d 972; Continental Insurance Co. v. Griffin, Tex.Civ.App., 218 S.W. 2d 350; Mercury Ins. Co. v. Varner, Tex. Civ.App., 231 S.W.2d 519.

In the case of Jack v. Standard Marine Ins. Co., 33 Wash.2d 265, 205 P.2d 351, 354, 8 A.L.R.2d 1426, it was held: " * * * Once a vehicle loses its equilibrium and the overturning process has commenced and proceeded beyond the power of those in charge of the vehicle to stop its progress, it would be unimportant whether the vehicle turned over and over, rolling down a hillside, or came to rest on a flat surface in an exactly horizontal position, or came to rest a short distance above the horizontal or at any other angle. It should be held that the vehicle had overturned or upset, within the meaning and intent of such a policy."

The judgment of the trial court is reversed and judgment here rendered that appellant recover of appellee the sum of $1,250, with interest and costs of suit, payable $892.50, with interest and attorney's fees, to the San Angelo National Bank, and the balance to appellant.

Reversed and rendered.

### On Appellee's Motion for Rehearing.

The appellee in his motion for rehearing urges that we were in error in holding that there was a splash constituting a collision and a slipping into a chughole or off the causeway constituting an upset, and in declining to hold that under the evidence the credibility of appellant's witness was a question of fact; and further in declining to hold that there was some evidence to support the presumed finding in support of the trial court's judgment of an independent intervening rise of the floodwaters, changing the course of events and destroying the car.

Our attention is directed to the failure of the pleadings of plaintiff to allege a "splash" or a "chughole," or that a wheel was driven off or pulled off of the causeway.

The defendant filed a motion to exclude the evidence of (1) the driving or pulling of the automobile into a hole, (2) the driving or pulling of a wheel off of the causeway, and of other happenings, because none were pleaded. The plaintiff sought to file an amended pleading intended to conform to the evidence. On February 10, 1950, the defendant moved to withdraw its motion to exclude the evidence, and then the court denied the plaintiff leave to amend.

We believe that the issues were tried by consent of the parties and were treated in all respects as if they had been raised by the pleading. Rule 67, Texas Rules of Civil Procedure.

■ With reference to the testimony given by the son of the appellant, and the only witness to testify in the case, as not being credible because of his age (17 years) and relationship to plaintiff, we believe that his testimony, which was not contradicted by any other witness or by attendant circumstances and was clear and direct, and was free from circumstances tending to cast suspicion thereon, is taken as true as a matter of law.

The defendant could have offered testimony concerning the chughole, or absence of one. The men operating the wrecker were doubtless available to testify as to conditions, and the other boy who was a passenger in the car, all could have been used to contradict the testimony given by the witness, if the facts were not correctly related. Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W.2d 904.

The motion for rehearing is overruled.

Overruled.